**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff-Appellant,**

v.

**HUTTIG SASH & DOOR COMPANY, Defendant-Appellee.**

No. 74–1493.

United States Court of Appeals, Fifth Circuit.

April 10, 1975.

William A. Carey, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, James P. Scanlan, Joseph T. Eddins, EEOC, Washington, D. C., Roger J. Martinson, Acting Reg. Atty., Alfonso McGhee, Associate Reg. Atty., Ellis L.

Bert, Asst. Reg. Atty., Lawrence J. Kamenetzky, Atty., EEOC, Atlanta Regional Litigation Center, Atlanta, Ga., Beatrice Rosenberg, Charles L. Reischel, Attys., EEOC, Washington, D. C., for plaintiff-appellant.

Stova F. McFadden, Mobile, Ala., Asa Ambrister, Washington, D. C., for defendant-appellee.

Before GODBOLD and MORGAN, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge:

Clavin Rencher filed a charge with the EEOC on January 14, 1969, alleging violations of Title VII of the Civil Rights Act in that the company had refused to hire him because of his race and that the company maintained job classifications and facilities segregated by race. On February 3, 1972, the EEOC issued a decision finding that there was no reasonable cause to believe that the employer had violated Title VII by refusing to hire Rencher or by maintaining facilities segregated by race but that there was reasonable cause to believe that the company was violating Title VII by maintaining job classifications segregated by race and sex and by placing advertisements for jobs indicating a preference as to sex.

On March 26, 1973, the EEOC notified Rencher that conciliations efforts had failed and issued the statutory right-to-sue notice to him. On May 9, 1973, Rencher presented his right-to-sue notice and his notice of failure of conciliation to the United States District Court for the Southern District of Alabama, which simply assigned a docket number to these papers. On June 1, 1973, the court appointed counsel for Rencher. On October 1, 1973, Rencher's counsel moved for leave to dismiss the action; and on October 3, an order was entered dismissing the action with prejudice. On November 1, 1973, the EEOC initiated this action, alleging racial discrimination. The company's motion to dismiss was granted on the ground that because of the dismissal of the private suit, there was no longer an outstanding charge on which the complaint could be predicated.

■ The sole issue which we must decide is whether after the termination of a charging party's private suit the EEOC can bring suit predicated on, but not limited to, the same charge. We have concluded that it can, and we reverse.

In resolving the issue before us, we are unable to gain much assistance from the legislative history of Title VII and the particular sections involved here. Courts have tended to rely upon policy arguments in deciding the various questions which have arisen under Title VII. However, we are here confronted with two opposing policy considerations, each of which has some attraction. The EEOC points to the remedial nature of the statute and argues that it should not be hampered in fighting employment discrimination. The company points to the judicial policy against duplication of proceedings and argues that duplicative suits should not be permitted.

To support its position, Huttig Sash & Door relies heavily upon EEOC v. Missouri Pacific R.R., 493 F.2d 71 (8th Cir. 1974). The Eighth Circuit held that once a charging party has filed suit pursuant to a right-to-sue notice, the EEOC is relegated to its right of permissive intervention under 42 U.S.C. § 2000e-6. The court in that case was not concerned that its ruling might prevent litigation of the discrimination issues raised by the EEOC, for the court was "fully confident" that the district judge would permit intervention by the EEOC. The narrow holding of *Missouri Pacific* is that while a private suit is pending, the EEOC cannot institute another suit but must seek to intervene. The court in *Missouri Pacific* did not have before it the question of what rights the EEOC has after the private party terminates his suit.

The rationale of *Missouri Pacific* offers little help in deciding the issue now

before us. If the Eighth Circuit had ruled that the EEOC could bring an independent action at the same time that the private suit was being litigated, there would be two lawsuits proceeding through the courts simultaneously and dealing with identical or certainly similar issues. However, if the private suit has already been terminated (as is our situation), there would not be duplicative suits before the courts. Thus we are not faced with the same considerations that confronted the Eighth Circuit.

■ We are convinced that Congress meant to avoid duplicative proceedings by limiting the EEOC to permissive intervention when the EEOC raises no substantially different issues and seeks no relief other than for the private party.[1] An entirely different situation exists when the EEOC uses the filing of a charge simply as a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices; this investigation might frequently disclose, as in this instance, illegal practices other than those listed in the charge.

■ We agree with the Sixth Circuit's view as expressed in EEOC v. Kimberly-Clark Corp., 6 Cir., 511 F.2d

1352, 1363 [1975]: "The Congressional intent that duplicitous proceedings be avoided does not mean, however, that the EEOC should be limited to permissive intervention in a private suit *when its investigation on the one charge has disclosed a number of violations which require judicial attention.*"[2] [Emphasis added.] The filing of a charge with the EEOC is simply the first step in pinpointing and then correcting employment discrimination. If upon investigating a particular charge of discrimination (which itself might be relatively minor) the EEOC discovers other discriminatory practices, surely the EEOC should not be prevented from taking appropriate action on those newly discovered practices simply because the charging party settles his suit with the employer.[3] We are mindful also that under a contrary holding an employer might seek to settle a particular individual's grievance in order to prevent the EEOC from bringing suit on other discriminatory practices discovered in investigating the original charge. Such a result would not be at all consistent with the clear Congressional intent to end employment discrimination. The enforcement of the policies of Title VII should not be left to such fortuities. *See* Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).

---

1. Although cease-and-desist authority for the EEOC was eventually rejected by the Congress, the following excerpt from the House Report is relevant:

   The committee was concerned about the interrelationship between the newly created cease and desist enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions). It contains as well a provision for termination of the right of private action once the Commission issues a complaint or enters into a conciliation or settlement agreement which is satisfactory to the Commission and to the person aggrieved. If such an agreement is not acceptable to the aggrieved party, his private right of action is preserved.
   1972 U.S.Code Cong. & Admin.News at 2148.

2. In footnote 15 *Kimberly-Clark* disagrees with *Missouri Pacific* as follows:

   We respectfully disagree with the Eighth Circuit's conclusion in EEOC v. Missouri Pacific R.R., 493 F.2d 71 (8th Cir. 1974). As Judge Heaney points out in his concurrence in that case, 493 F.2d at 75, a grant of permissive intervention does not guarantee that the EEOC will be able to raise issues that have arisen in the investigation of a claim on which the private party has sued, when the issues the EEOC seeks to litigate are not raised by the private party. We believe the remedy for this is not to expand the concept of intervention beyond its normal meaning, but to allow the EEOC to bring suit based on the findings that its investigation warrants.

3. The situation in the case *sub judice* can arise only after the individual has received a right-to-sue notice from the EEOC and has actually filed suit. Once a charge is filed by an individual, it may be withdrawn only with the consent of the EEOC. 29 C.F.R. § 1601.9 (1974).

**456**

Although the termination of the aggrieved person's suit does not cut off the EEOC's right to bring suit to end practices discovered through the investigation of the charge filed by that person, the EEOC would be barred from filing suit on that particular charge and on behalf of that person who had had his suit adjudicated. Res judicata would prevent such a suit.

For the foregoing reasons the order of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.