**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

v.

**CONTINENTAL OIL COMPANY, Defendant-Appellee.**

No. 75–1908.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 21, 1977.

Decided Jan. 21, 1977.

Paul E. Mirengoff, Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg and Charles L. Reischel, Washington, D. C., on the brief), for plaintiff-appellant.

Carl F. Eiberger, Denver, Colo. (Richard M. Lavers, Rodney L. Smith, Denver, Colo., Thomas Montgomery, Houston, Tex., on the brief), for defendant-appellee.

Before HILL, McWILLIAMS and BARRETT, United States Circuit Judges.

HILL, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) appeals dismissal of its suit brought in the United States District court for the District of Colorado pursuant to Section 706 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5).

Samuel Willis and Willie C. Stanley, both black, applied for employment with Continental Oil Company (Continental) in Commerce City, Colorado, in April 1971. Their applications were denied. They initiated complaints with the Colorado Civil Rights Commission alleging that Continental's refusal to hire them was racially motivated. On August 5, 1971, the Colorado Civil Rights Commission dismissed the complaints for want of probable cause. Willis and Stanley filed charges with the EEOC on August 3 and August 9, 1971, respectively. They again alleged that Continental refused to hire them because they were black. The EEOC conducted an investigation of the charges and concluded that they were supported by reasonable cause. Conciliation efforts were not successful.

The EEOC took no immediate steps toward litigation. In due course, Willis and Stanley requested and received "right to sue" letters from the EEOC and brought suit against Continental in the United States District Court for the District of Colorado, each alleging that he had been refused employment with Continental on account of race. *Willis v. Conoco*, No. C–5467 (D.Colo., filed October 25, 1973); *Stanley v. Conoco*, No. C–5203 (D.Colo., filed July 19, 1973). Each prayed for relief in the form of back pay, injunction, and declaratory judgment.

On August 27, 1974, the Commission filed this action, alleging § 706 of the Civil Rights Act of 1964 as its authority to litigate. Its statement of claim was as follows:

6. More than thirty (30) days prior to the institution of this action, charges were filed with the Commission alleging that the Defendant had engaged in unlawful employment practices under Title VII.

7. The Commission, after investigating and finding reasonable cause to believe that Defendant had engaged in unlawful employment practices, has been unable, through informal methods of conference, conciliation and persuasion, to secure a conciliation agreement acceptable to it.

8. Since July 2, 1965, and continuously up until the present time Defendant has intentionally engaged in unlawful employment practices at its Commerce City facility, in violation of Section 703 of Title VII, 42 U.S.C. Section 2000e–2, which include but are not limited to the following:

Defendant has discriminated and continues to discriminate on the bases of race and national origin by:

a. Failing to hire blacks and Spanish-surnamed Americans because of their race and national origin;

b. failing to recruit blacks and Spanish-surnamed Americans because of their race and national origin;

c. maintaining educational requirements which have a disparate effect on blacks and Spanish-surnamed Americans;

d. maintaining and utilizing tests which screen out a disproportionate number of blacks and Spanish-surnamed Americans;

e. utilizing subjective personnel selection criteria which screen out blacks and Spanish-surnamed Americans because of their race and national origin.

9. The effect of the policies and practices complained of in paragraph 8 above, has been to deprive blacks and Spanish-surnamed Americans of equal employment opportunities and otherwise adversely to affect their status as employees because of their race and national origin.

The EEOC's prayer for relief requested an injunction prohibiting Continental from engaging in discriminatory employment practices, an order instituting affirmative action programs to eradicate the effects of past discrimination against blacks and Spanish-surnamed Americans, and an order directing Continental to "make whole those persons adversely affected . . . by providing back pay, with interest, in an amount to be proved at trial . . .."

Continental moved for a more definite statement, which motion was granted. *EEOC v. Continental Oil Co.,* 393 F.Supp. 167 (D.Colo.1975). The trial court ordered additional facts alleged.

Such facts should include the names of persons filing the charges of discrimination alleged in the complaint, together with the dates of filing of such charges. The period of time during which the investigation was held should also be in-

cluded. Another allegation of importance is whether the Colorado Civil Rights Commission made any investigation and if so the extent to which the EEOC used or relied upon that investigation. Finally, the plaintiff should be required to state for what period of time and for how many employees or other persons back pay is claimed.

393 F.Supp. at 172.

The EEOC filed an amended complaint, again alleging that the action "is expressly authorized by Section 706(f)(1)" of the Act. Willis and Stanley were identified as the charging parties. The EEOC alleged that it had given substantial weight to the findings of the Colorado Civil Rights Commission and that its investigation began on December 28, 1971, and was completed on May 31, 1972. No other aggrieved individuals were identified, though the allegations of paragraphs 8 and 9 of the original complaint were included verbatim in the amended complaint. The prayer for relief was substantially unchanged. On August 12, 1975, the trial judge entered an order limiting the scope of the EEOC's action to the charges of Willis and Stanley. The judge noted that the amended complaint did not plead a pattern or practice of discrimination, as would be required for a civil action under § 707 of the Act (42 U.S.C. § 2000e–6), nor did the EEOC seek certification of a class for a proceeding under Fed.R.Civ.P. 23, and concluded that it stated a claim only on behalf of Willis and Stanley. On October 22, 1975, the trial court entered an order dismissing the action for the reason that, as limited to the charges of Willis and Stanley, it duplicated the private actions previously filed by them.

The trial court's order of dismissal places into issue the authority of the EEOC to bring a separate civil action under § 706(f)(1) on the present facts.[1] We must construe a statute creating a right of action in the EEOC and are therefore dependent upon the specific language of the statute.

1. The parties direct much of their argument to the question of upon whose behalf the EEOC may sue. Our holding makes it unnecessary

for us to consider the question of the permissible scope of EEOC actions on a given charge under § 706.

*Ewing v. Risher,* 176 F.2d 641 (10th Cir. 1949).

In 1972, Congress changed the role of the EEOC within Title VII of the Civil Rights Act of 1964. Theretofore it had been a conciliator, investigating charges of discrimination and using its powers of conference, conciliation, and persuasion to seek compliance with the Act. After some years of experience under the Act, Congress perceived a more forceful role was necessary.[2]

The EEOC is presently authorized to file two types of civil actions to redress employment discrimination. Under § 707, it may bring a civil action when it determines that there is "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured [by provisions of the Act relating to employment discrimination], and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described . . .." 42 U.S.C. § 2000e–6(a).

■ Section 706, on the other hand, is addressed to vindication of individual instances of employment discrimination. EEOC involvement is initiated by the filing of a specific charge of employment discrimination. The EEOC must investigate and make a finding as to reasonable cause. If reasonable cause is found to support the charge, the next step is conciliation. Only when conciliation is attempted and the efforts fail may the EEOC enter into litigation under § 706. *EEOC v. Wilson & Co.,* 535 F.2d 1213 (10th Cir. 1976); *EEOC v. Duval Corp.,* 528 F.2d 945 (10th Cir. 1976).

■ The aim of § 707 actions is eradication of broad based systematic discrimination. *United States v. International Ass'n of Bridge Workers,* 438 F.2d 679 (7th Cir. 1971), *cert. denied,* 404 U.S. 830, 92 S.Ct. 75, 30 L.Ed.2d 60. The thrust of § 706 actions, on the other hand, is vindication of individual instances of discrimination.

It was unquestionably the design of Congress in enactment of § 707 to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals. . . . Rather, it is to those individual grievances that Congress addressed § 706, with its attendant requirements that charges be filed, investigations conducted, and an opportunity to conciliate afforded the respondent when "reasonable cause" has been found. . . (citations omitted).

*United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 843 (5th Cir. 1975).

In the context of that statutory scheme of enforcement, we consider the provisions of § 706 to determine whether the statute authorizes the EEOC to file a civil action predicated upon the charges of two individuals, each of whom has previously filed an action in vindication of his charge of employment discrimination. Section 706(f)(1) provides in pertinent part:

(f)(1) If within thirty days after a charge is filed with the Commission . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . .. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . .

2. *See generally* the legislative history of the 1972 amendments, [1972] U.S.Code Cong. & Adm.News, p. 2137 *et seq.*

shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. . . . Upon timely application, the court may, in its discretion, permit the Commission . . . to intervene in such civil action upon certification that the case is of general public importance. . . .

■ As provided in § 706(f)(1), the EEOC has a period of 150 days[3] during which it alone may file suit. If it does not sue within that time, the charging party may request a "right to sue" letter and bring suit individually. Neither the expiration of the initial period during which the EEOC alone may sue nor the issuance of a "right to sue" letter terminates the EEOC's authority to sue. *EEOC v. Wilson & Co., supra; EEOC v. Duval Corp., supra.* The EEOC's right to sue is at that point concurrent with the right of the charging party.

Upon the question of the right of the EEOC to bring suit after the charging party has exercised his right, various readings of § 706(f)(1) are manifested in decisions of the circuit courts. The first is demonstrated in the recent Third Circuit case of *EEOC v. North Hills Passavant Hospital,* 544 F.2d 664 (1976). The statute is there read to allow EEOC to bring suit, assuming conditions precedent are met, regardless of the fact that the charging party has previously brought an action on his charge. The rationale is that the statute creates a right of action in the EEOC and does not expressly terminate it when the individual has commenced suit.

Section 706(f)(1) permits the EEOC to sue a nongovernmental defendant and authorizes aggrieved private parties to intervene as of right in an EEOC suit. It also permits aggrieved private parties to bring independent civil actions after the receipt of a notice of failure of conciliation, and provides that the court may, in its discretion, permit the EEOC to intervene in such private actions. Nowhere in § 706(f)(1) is there any explicit qualification of the EEOC's general authority to sue as granted in the first sentence of the section. If there is such a qualification it must be implied from the limited right of permissive intervention afforded to the EEOC with respect to private suits. A contrary interpretation, however, may be implied by interpreting the district court's discretion to reject intervention by the EEOC as evidencing a Congressional viewpoint that no harm could come from a negative exercise of such discretion because the EEOC could always initiate its own suit.

*EEOC v. North Hills Passavant Hospital, supra,* at 668.

An alternative reading of the section is represented by the Eighth Circuit case of *EEOC v. Missouri Pacific R. R.,* 493 F.2d 71 (1974).[4] The holding of that case is that when an individual has brought suit on his charge the EEOC may not sue but rather is limited to participation in the litigation through intervention in the private suit. The Eighth Circuit relied upon the legislative history of the 1972 amendments indicating a congressional concern for duplicitous remedies, as manifested by the inclusion of a provision for intervention by the EEOC or the charging party into a suit previously filed by the other.

The scheme of the statute itself, as thus described, negates the Commission's double-barreled approach. Once either the Commission or the charging party has filed suit, § 2000e–5(f)(1) speaks only in terms of intervention—the absolute right of the charging party to intervene if the Commission elects to file suit within 180 days; the permissive right of intervention on the part of the Commission in the private action. The statute cannot be read to warrant duplicitous lawsuits

---

3. A period of 180 days after the filing of the charge, less the initial 30 days in which no suit may be brought.

4. *See also EEOC v. Occidental Life,* 535 F.2d 533 (9th Cir. 1976).

when both actions find their genesis in one unlawful employment practice charge.

493 F.2d at 74.

▮ Still another application of the section, which we shall discuss briefly, appears in the cases of *EEOC v. McLean Trucking Co.,* 525 F.2d 1007 (6th Cir. 1975); *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir. 1975), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368; and *EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir. 1975). The EEOC is not limited to the terms of the charge filed so far as the scope of a § 706 suit it brings upon that charge. Rather, it may sue to vindicate further acts or incidents of discrimination discovered in the process of investigation of the charge filed and reasonably related to that charge, so long as a finding of reasonable cause is made and conciliation is attempted as to the additional acts. *EEOC v. Occidental Life,* 535 F.2d 533 (9th Cir. 1976). According to the cited Fifth and Sixth Circuit cases, if the EEOC suit is broader in scope, the EEOC suit may be allowed to proceed in spite of the previously filed private action. As we are unable to find within the language of the statute any basis for defining the right of the EEOC to sue in terms of the scope of its suit, we reject that construction of the section.

We espoused the holding of the *Missouri Pacific* case in *EEOC v. Duval Corp., supra.* The question in that case was whether the right of the individual to sue during the 90-day period following the notification of failure of conciliation on his charge was exclusive or concurrent with the right of the EEOC to sue. We held that the rights to sue were concurrent during that period. Duval's primary contention in that case was that to allow both the EEOC and the charging party the right to sue would result in multiplicity of litigation, thus constraining a defendant to answer more than one lawsuit on the same charge. We rejected that argument in the following language:

> Congress was aware of this potential problem and provided a method to avoid duplicitous actions. To protect the interests of both the EEOC and the aggrieved party in a particular complaint, Congress established the right of either party to apply for intervention in a suit filed by the other party. Multiplicity of actions is prevented during the 90 day period because when one of the parties sues, the other is limited to possible participation only through intervention.

528 F.2d at 948–949.

▮ Section 706(f)(1) provides that the EEOC may be allowed to intervene in a previously filed private lawsuit at the discretion of the trial court and upon certification that the case is of general public importance. In construing that provision we are guided by the rule that, where possible, statutes are to be given such effect that no clause, sentence, or word is rendered superfluous, contradictory, or insignificant. *McDonald v. Thompson,* 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938); *Wilderness Society v. Morton,* 156 U.S.App.D.C. 121, 479 F.2d 842 (1973); *Ruiz v. Morton,* 462 F.2d 818 (9th Cir. 1972), *aff'd,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270. Under the holding of the *North Hills* case, the noted provision of § 706(f)(1) is rendered superfluous, for if the EEOC is allowed to file suit upon the charge of an individual despite the previous filing of a lawsuit by that individual, the EEOC would be able to participate in that private suit, with the permission of the trial court and without regard to certification of the case as of general public importance, by way of a motion to consolidate the suits under Fed.R.Civ.P. 42(a). The statutory grant of permissive intervention would be rendered inconsequential, as would be the directive that the case be certified as of general public importance as a condition to participating in a private suit. We believe that the statutory provision for intervention must be read as the exclusive procedure by which the EEOC may participate in a previously filed private lawsuit under § 706(f)(1) in order to give it significance. Allowing a second suit to proceed on the charge would emasculate the provision.

Such an interpretation is, at the very least, not inconsistent with the available legislative history. The Third Circuit, in

the *North Hills* case, discusses the legislative history of the 1972 amendments at length. As originally proposed, the amendments would have given the EEOC authority to issue cease and desist orders, after the model of the National Labor Relations Board. As finally enacted, the amendments gave the EEOC authority to bring civil suit. Historically, the persuasive authority for reading the statute to bar EEOC suit after the charging party has sued has been the legislative history demonstrating a concern on the part of Congress for the possibility of duplicitous proceedings for relief. It is true that the most often quoted portions of legislative reports refer to the bill as originally proposed, granting cease and desist authority.[5] Certainly different considerations are involved in dealing with conflicts between administrative and judicial proceedings, as opposed to potentially overlapping civil litigation. The Third Circuit notes that in the section-by-section analysis of the Conference-passed version of the bill there is no direct reference to concern over duplicative lawsuits. *EEOC v. North Hills Passavant Hospital, supra* at 672. The best that can be said of the legislative history on the point is that it is inconclusive. We would hesitate to conclude that because the problem was not mentioned in certain portions of the analysis it was not a concern of the Congress. One could as easily infer from the absence of discussion on the point that the legislators were assured they had eliminated the problem by inclusion of the provision for EEOC intervention. We place primary reliance here on the construction of the language of the statute to avoid surplusage.

The EEOC has various opportunities to litigate under the statute. During the initial 180 days after the filing of a charge, it alone may sue. It may proceed thereafter so long as the individual has not brought suit. If the charging party does sue, it may intervene with the permission of the court. Upon intervention, the private suit may be expanded, again at the discretion of the trial judge, to allow the EEOC to redress other incidents of employment discrimination discovered in its investigation. *EEOC v. Missouri Pacific R. R., supra.* If there are additional incidents of discrimination and the EEOC has foregone its opportunities to address them in a suit filed on a particular charge, additional charges may be obtained upon which to proceed. Further, if the additional incidents sought to be addressed are pervasive, the matter could be certified for § 707 processing, which section affords a broad based remedy without regard to individual charges or complaints. It has been suggested that disallowing a separate EEOC suit after the private suit has been filed will result in defendants attempting to settle individual complaints to avoid the spectre of an EEOC action addressing additional incidents of discrimination. *EEOC v. Huttig Sash & Door Co., supra.* In the context of the various procedures by which the EEOC may address those additional incidents of discrimination under the section, this additional impetus for employers or other respondents to settle individual complaints cannot be said to be a harmful result.

■ As this suit was filed pursuant to § 706(f)(1) and predicated upon the charges of two individuals, Willis and Stanley, each of whom had previously brought an action upon his charge, we find dismissal proper.

AFFIRMED.

**5.** *E. g., EEOC v. Missouri Pacific R. R.,* 493 F.2d 71, 74 (8th Cir. 1974):

The House report discusses the interrelationship between the originally-proposed cease and desist powers of the Commission and the private right of action as follows:
The committee was concerned about the interrelationship between the newly created cease and desist enforcement powers of the Commission and the existing right of public action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for

termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions). It contains as well a provision for termination of the right of private action once the Commission issues a complaint or enters into a conciliation or settlement agreement which is satisfactory to the Commission and to the person aggrieved.
H.R.Rep.No.92–238, 92d Cong., 2d Sess., [1972] U.S.Code Cong. & Admin.News at 2148.