Mrs. Shirley Baker (TRUVILLION), Plaintiff-Appellant,

v.

KING'S DAUGHTERS HOSPITAL, Defendant-Appellee.

No. 77–2941.

United States Court of Appeals, Fifth Circuit.

March 28, 1980.

Rehearing and Rehearing En Banc Denied May 19, 1980.

John L. Walker, Phillip J. Brookins, Jackson, Miss., for plaintiff-appellant.

Vella M. Fink, E. E. O. C., Washington, D. C., for amicus curiae.

M. Curtiss McKee, Armin J. Moeller, Jr., Jackson, Miss., for defendant-appellee.

Before WISDOM, TJOFLAT, and REAVLEY, Circuit Judges.

WISDOM, Circuit Judge:

This is a job discrimination case. Count I of the complaint raises the question whether, in the unusual circumstances this case presents, the plaintiff may bring suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* The Equal Employment Opportunity Commission (E.E.O.C.) had previously brought a Title VII suit on behalf of Ms. Shirley B. Truvillion, the charging party, and others similarly situated, seeking the same relief Ms. Truvillion now seeks in the instant suit. The district court dismissed Suit I because of the E.E.O.C.'s failure to comply with preconditions (termed "jurisdictional") requisite to the court's going forward to determine the substantive claim. The first prerequisite was compliance with the requirement of the Commission's regulation, 29 C.F.R. § 1601.-23 (1974), that it notify the respondent promptly in writing of its unsuccessful attempt to obtain a conciliation agreement. Federal agencies, of course, must obey their own regulations. The second prerequisite was a good faith investigation of the charges, particularly including consideration of the qualifications of the charging party for the job for which she was rejected. The court concluded therefore that the E.E.O.C. had failed to establish a prima facie case of racial discrimination as defined by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. In the action now before us, Suit II, the district court granted summary judgment for the defendant on the ground that the earlier judgment was res judicata as to the plaintiff's Title VII claim. We hold that the district court erred in applying the res judicata doctrine; the court in the earlier

case never reached the merits of the complaint.

Count II of the complaint was brought under the Civil Rights Act of 1870, 42 U.S.C. § 1981. We hold that the district court erred in applying the Mississippi three year statute of limitations, applicable to unwritten contracts, rather than the Mississippi six year catch-all statute, applicable to actions not covered specifically by a statute of limitations.

## I.

In October 1972 Ms. Shirley Baker Truvillion filed charges with the E.E.O.C. alleging that King's Daughters Hospital in Lincoln County, Mississippi, had refused to hire her as a laboratory technician because of her race. The Commission sent the hospital a letter noting that it found reasonable cause to believe that the hospital had discriminated against Ms. Truvillion. The letter further noted that the hospital practiced discrimination by maintaining segregated departments, classifying jobs by race and sex, and engaging in recruitment policies that effectively excluded minority group applicants.

Ms. Truvillion received a copy of the letter. She also spoke to E.E.O.C. personnel on several occasions about possible conciliation with the hospital. In November 1974 the E.E.O.C. notified her that her "charge of racial discrimination was being forwarded to the Equal Employment Opportunity Commission Litigation Center in Atlanta, Georgia, for possible suit".

In January 1975, the E.E.O.C. filed suit against the hospital (Suit I) under Section 706(f)(1) of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e–5(f)(1).[1] Ms. Truvillion did not learn of the suit until she telephoned the Commission's Atlanta Litigation Center. She called back several times, and was told that the suit was still pending, but at no time was she informed of her right to intervene. Since she repeatedly received similar reports on the suit's progress, she stopped calling and relied on the E.E.O.C. to inform her as to the status of the proceedings.[2]

The district court entered summary judgment against the Commission in February 1976 "for failure of the E.E.O.C. to meet the jurisdictional prerequisites to suit." 12 FEP Cases 484. The court found, first, that the E.E.O.C. had not complied with its own regulation, 29 C.F.R. § 1601.23, which requires that the Commission give written notice to respondent, the hospital, that conciliation efforts had failed and would not be resumed except upon request. Second, the court found that the Commission had not made a "good faith investigation" to determine whether the charging party was qualified for the job she was seeking. Under *McDonnell Douglas* this was an essential link to establish a prima facie case of racial discrimination.

1. The E.E.O.C.'s Suit I complaint, on which Ms. Truvillion based her complaint, alleged that:

\* \* \* \* \* \*

7. Since July 2, 1965, and continuously up until the present time, defendant has intentionally engaged in unlawful employment practices at its Brookhaven, Mississippi hospital in violation of Section 703(a) of Title VII. These policies and practices include, but are not limited to, the following:

(a) Failing and refusing to hire blacks because of their race;

(b) Maintaining departments and job classifications which are segregated on the basis of race and sex and otherwise limiting, segregating and classifying employees in a way which deprives and tends to deprive blacks and females of employment opportunities and otherwise adversely affects their status because of their race and sex;

(c) Failing and refusing to recruit blacks on an equal basis with whites and otherwise discriminating against blacks with respect to terms, conditions, and privileges of employment because of their race;

(d) Failing and refusing to take appropriate affirmative action to eliminate its discriminatory employment policies and practices and to correct the effects of past discrimination against blacks and females.

2. During the time her claim was being processed by the E.E.O.C., the Hospital offered Ms. Truvillion employment as a laboratory aide. This position paid less than the position of laboratory technician for which she had initially applied. Ms. Truvillion accepted this offer and began work at the Hospital in March 1974.

The E.E.O.C. neither appealed nor informed Ms. Truvillion about the judgment. Instead, eight months later, in October 1976, the Commission on its own initiative sent her a right-to-sue letter. The letter stated that the E.E.O.C. would not proceed with the case, and informed her that she could bring her own action within 90 days of receiving the letter.[3]

Ms. Truvillion brought suit in January 1977 on her own behalf and on the behalf of all those similarly situated.[4] Seeking relief under Title VII and 42 U.S.C. § 1981, Ms. Truvillion alleged that the hospital had denied her and other black persons equal employment opportunities because of race.

The district court granted the hospital's motion for summary judgment against Ms. Truvillion in Suit II. The court's decision on her Title VII claim is based on three holdings. First, the "summary judgment granted by the court in the prior suit is considered a final judgment on the merits" and because Ms. Truvillion was in privity with the E.E.O.C. "she is subject to the res judicata effect of the prior judgment". Second, the filing by the E.E.O.C. of Suit I cut off Ms. Truvillion's private right of action under the statute. She waived her statutory rights by failing to intervene in Suit I. Third, the E.E.O.C. could not issue her a valid right-to-sue letter after having brought Suit I. Because the receipt of a valid right-to-sue letter is a "jurisdictional" prerequisite to a private Title VII suit, the court concluded that it lacked "jurisdiction" over Ms. Truvillion's Title VII claim.

The court found that Ms. Truvillion's claim based on Section 1981 was barred by the statute of limitations. In the absence of a special federal statute of limitations, the court turned to state law and, reasoning that her Section 1981 claim was on an unwritten employment contract, applied the Mississippi statute of limitations that governs such actions. The limit is three years.[5] Ms. Truvillion's Section 1981 claim was brought four years and three months after the Hospital rejected her application for employment.

## II.

### A.

We consider first the district court's determination that the judgment in Suit I is a bar to Ms. Truvillion's Title VII claim. We hold that the district court misapplied the doctrine of res judicata.[6]

A recent decision of our court states the accepted doctrine of res judicata:

> For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court

---

**3.** The right-to-sue letter stated in part:

The Commission has found reasonable cause to believe your charge of employment discrimination is true but has not entered into a Conciliation Agreement to which you would have been a party because attempts to achieve such a voluntary settlement with the respondent(s) have been unsuccessful.

The Commission has determined that it will not bring a civil action against the respondent(s) and accordingly is issuing you this Notice of Right-to-Sue. The issuance of this Notice terminates the Commission processing of your charge, except that the Commission may seek status as intervenor if you decide to sue on your own behalf as described below.

**4.** The class action was not certified under Rule 23, Fed.R.Civ.P.

**5.** The statute was amended in 1976. The limit is now one year.

**6.** Two related doctrines are embraced by the term res judicata. The first, claim preclusion, prevents in a second action the adjudication of claims that were or could have been adjudicated in a prior action between the parties. The second action is said to be merged in the first judgment if the party wins, and barred if he loses. Restatement (Second) of Judgments, ch. 3 (Tent. Draft No. 1, 1973). The second doctrine, issue preclusion, or collateral estoppel, prevents in a second action the relitigation of fact or law that was decided in a previous action, on a perhaps unrelated claim, and that was necessary to the decision. *Id.* § 68. For discussion of the distinction, see *Cromwell v. County of Sac,* 1876, 94 U.S. 351, 352–53, 24 L.Ed. 195; *Irving National Bank v. Law,* 2 Cir. 1926, 10 F.2d 721, 724 (L. Hand, J.). Here we are concerned with claim preclusion, since the claims Ms. Truvillion now pressed were among those pressed by the EEOC in Suit I.

of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

*Kemp v. Birmingham News Co.*, 5 Cir. 1979, 608 F.2d 1049 at 1052. Contrary to the district court's view, there was no judgment on the merits in Suit I. The requirements of E.E.O.C.'s notice to the respondent and a good faith investigation by the E.E.O.C. in a loose sense might be treated as jurisdictional. They are, however, nothing more than procedural prerequisites to the court's determination of the substantive issues. They do not touch the merits.

(1) The E.E.O.C. notice protects the employer by warning him of his last chance to obtain an amicable resolution of the E.E.O.C.'s complaint. *E.E.O.C. v. Western Electric Co. Inc.*, D.Md.1974, 382 F.Supp. 787, 796. The court reasoned correctly that if notice was imperfect, attempts had not yet "failed" within the meaning of § 706(f)(1) of Title VII. Because notice signals a failure at conciliation and such failure triggers the E.E.O.C.'s authorization to sue, notice is a prerequisite to suit. *E.E.O.C. v. Container Corp. of America*, M.D.Fla.1972, 352 F.Supp. 262, 265. *See E.E.O.C. v. Louisville & Nashville R. Co.*, 5 Cir. 1974, 505 F.2d 610, 617. Its absence therefore requires dismissal of the complaint.

But such a dismissal does not involve the substantive claim of discrimination. Essentially the dismissal was based upon the failure of the E.E.O.C. to comply with its own regulation.

■ Even if the prerequisites were considered jurisdictional, the judgment in Suit I did not operate as an adjudication on the merits. Under Rule 41(b), Fed.R.Civ.P., a dismissal, "*except for lack of jurisdiction* [or] venue", or failure to join a necessary party, "operates as an adjudication upon the merits" unless the court specifies that the dismissal is without prejudice. The Supreme Court has characterized as "jurisdictional", for purposes of Rule 41(b), "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite the Court's going forward to determine the merits of his substantive claim". *Costello v. United States*, 1961, 365 U.S. 265, 285, 81 S.Ct. 534, 545, 5 L.Ed.2d 551. *See also Stebbins v. Nationwide Mutual Ins. Co.*, 4 Cir. 1975, 528 F.2d 934, 937, *cert. denied*, 1976, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353; *Stebbins v. Keystone Insurance Co.*, D.C.Cir.1973, 156 U.S.App.D.C. 326, 481 F.2d 501; *Tademy v. Scott*, 5 Cir. 1946, 157 F.2d 826, 828. Wright & Miller, Federal Practice § 2373, pp. 234–239 (1971). Because a dismissal for failure to meet a condition for filing suit does not "operate as an adjudication upon the merits", it cannot bar a subsequent suit between the parties.

(2) The court in Suit I discussed the failure of the E.E.O.C. to investigate the plaintiff's qualifications in the following terms:

It is a simple enough proposition that there could be no discrimination against the Charging Party if she were not qualified for the job for which she applied. Her charge has been in three levels of the Commission—the investigation stage, the conciliation stage, and the litigation stage. At no point has the Commission ever considered the Charging Party's lack of qualifications, even though the respondent hospital has raised this issue at every stage of the proceedings.

The entire statutory scheme of Title VII stresses voluntary compliance and resolution of disputes by conciliation, attempting to avoid time consuming and expensive litigation. Based upon the evidence before it, this Court must conclude that the complete failure of the Commission to make a good faith investigation of the charges against this respondent is in derogation of the established law and of the Commission's own regulations and can only deter it from reaching its well-meaning goal of eliminating employment discrimination.

■ The court read into § 706(f)(1) the requirement that all the prima facie elements of the E.E.O.C.'s case, as prescribed by *McDonnell Douglas v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 must be established by the Commission before it can issue a reasonable cause determination.

An essential element is a good faith investigation of the charging party's qualification as a condition to filing suit. *See E.E.O.C. v. Container Corp. of America*, M.D.Fla.1972, 352 F.Supp. 262, 265. The Commission's failure to meet this condition mandated dismissal of the complaint. This second ground of decision, then, like the first, is concerned with the failure of the E.E.O.C. to meet a condition precedent to suit. The dismissal, therefore, was not on the merits and does not bar a second suit by either the E.E.O.C. or Ms. Truvillion.

All the E.E.O.C. had to do was to start over, conduct a proper investigation, issue a prompt notice to the Hospital if conciliation should fail, make a finding of reasonable cause, and sue again. *A fortiori,* if the judgment in Suit I has no res judicata effects as to the E.E.O.C., it has no res judicata effects as to Ms. Truvillion.

### B.

We turn next to the question whether the filing by the E.E.O.C. of Suit I cut off Ms. Truvillion's right to bring her own suit under Title VII. The trial court based its holding—that the filing of a suit by the Commission cuts off a charging party's right to sue—on its view of the design of Title VII. That design is intended, the court reasoned, to prevent duplication of proceedings. This intent is manifested by a right to intervene in pending suits, coupled with court fashioned rules against redundant actions. Thus, a private party whose interests may be affected by a suit the E.E.O.C. brings has an unqualified right to intervene in the suit, if he timely seeks to do so.[7] And the E.E.O.C. may intervene, at the discretion of the court, in a Title VII suit brought by a private plaintiff.[8] Moreover, it has been held that a private plaintiff's sole avenue of redress is intervention if the E.E.O.C. sues.[9] Other courts have added the caveat that she may bring a second suit if the relief she seeks differs from that sought by the E.E.O.C. in the first suit.[10] Symmetrically, the E.E.O.C. may not bring a second suit based on the transactions that were the subject of a prior suit by a private plaintiff, unless the E.E.O.C. seeks relief different from that sought by the individual.[11]

Congress certainly sought to prevent the duplication of Title VII suits.[12] But this easy axiom does not without more solve the problem of *when* the right to bring a private suit is cut off. The idea that it is cut off by the mere filing of an E.E.O.C. suit assumes the efficacy of the statutory right to intervene in the Commission's suit. True, where a party can intervene in a pending action and add her voice to that of the Commission, she may be assured that her interests are as well represented as they can be. It does no injustice to prevent an individual from prosecuting a second action seeking the relief the E.E.O.C. sought in a prior action, when the individual consciously waived intervention in that action.

---

7. 42 U.S.C. § 2000e–5(f)(1). *See McClain v. Wagner Electric Corp.*, 8 Cir. 1977, 550 F.2d 1115, 1119; *Nevilles v. E.E.O.C.*, 8 Cir. 1975, 511 F.2d 303, 305.

8. 42 U.S.C. § 2000e–6. *See, e. g., E.E.O.C. v. Continental Oil Co.*, 10 Cir. 1977, 548 F.2d 884, 889; *E.E.O.C. v. Huttig Sash & Door Co.*, 5 Cir. 1975, 511 F.2d 453, 454–55.

9. *McClain v. Wagner Electric Corp.*, 8 Cir. 1977, 550 F.2d 1115.

10. *Williamson v. Bethlehem Steel Corp.*, 2 Cir. 1972, 468 F.2d 1201; *E.E.O.C. v. Rinella & Rinella*, N.D.Ill.1975, 401 F.Supp. 175. We have not considered the question.

11. *E.E.O.C. v. Huttig Sash & Door Co.*, 5 Cir. 1975, 511 F.2d 453. *See also E.E.O.C. v. North Hills Passavant Hospital*, 3 Cir. 1976, 544 F.2d 664, 668; *E.E.O.C. v. Kimberly-Clark Corp.*, 6 Cir. 1975, 511 F.2d 1352, *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368. Other circuits have differed, not permitting a second suit by the Commission. *See E.E.O.C. v. Continental Oil Co.*, 10 Cir. 1977, 548 F.2d 884; *E.E.O.C. v. Missouri Pacific R.R.*, 8 Cir. 1974, 493 F.2d 71. In support of permitting a second suit by the E.E.O.C., *see* Reiter, *The Equal Employment Opportunity Commission and "Duplicitous Suits": An Examination of E.E.O.C. v. Missouri Pacific Railroad Co.,* 49 N.Y.U.L. Rev. 1130 (1974).

12. H.R.Rep.No. 92–238, 92nd Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Admin.News, 1972, pp. 2137, 2147–48.

A different case is presented, however, when the earlier suit brought by the E.E.O.C. was jurisdictionally or procedurally defective. There is no right and no obligation to intervene in a defective suit. As we said in 1926, "[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit". *Kendrick v. Kendrick*, 5 Cir. 1926, 16 F.2d 744, 745, *cert. denied*, 1927, 273 U.S. 758, 47 S.Ct. 472, 71 L.Ed. 877. *See also United States ex rel. Texas Portland Cement Co. v. McCord*, 1914, 233 U.S. 157, 163, 34 S.Ct. 550, 553, 58 L.Ed. 893; *Fuller v. Volk*, 3 Cir. 1965, 351 F.2d 323, 328; *ICC v. Southern R. R.*, M.D.Ga.1974, 380 F.Supp. 386, 394–395, *vacated in part on other grounds*, 5 Cir. 1976, 543 F.2d 534, 535. The same reasoning applies to a procedurally defective suit—such as Suit I. Whether the right to intervene is permissive or unqualified cannot affect the application of this rule. Moreover, Ms. Truvillion had no obligation to act; she had the right to rely on the Commission's pursuing her claim vigorously to its conclusion. Only when she learned that the Commission would not bring a second suit on her claim did it become incumbent upon her to act. She learned this when she received her right-to-sue letter, and acted within the statutory period.

The appellee relies on several cases for the proposition that the filing of Suit I by the Commission cut off Ms. Truvillion's cause of action. None is apposite. In *Crump v. Wagner Electric Corp.*, E.D.Mo. 1973, 369 F.Supp. 637, the plaintiff sought to maintain an action on the same claim that formed the basis for an E.E.O.C. action then pending on his behalf. The court dismissed his action without prejudice, noting his right to intervene in the E.E.O.C. action. In the present case, of course, there is no action in which Ms. Truvillion could intervene. Appellee next cites *McClain v. Wagner Electric Corp.*, 8 Cir. 1977, 550 F.2d 1115. Plaintiff McClain made a complaint to the E.E.O.C., which then brought suit based in part on his complaint. The suit was terminated by a consent decree. Several years later, McClain requested and re-ceived a right-to-sue letter, and sought to bring an action based on the same acts he had complained of to the E.E.O.C. The employer defended by arguing that the plaintiff's claims were resolved in the earlier E.E.O.C. suit. McClain responded that he had not received notice of the suit or of the consent decree that terminated it. The Eighth Circuit held that he had no right to maintain a separate action; "that his remedy was by way of intervention [in the earlier suit]", 550 F.2d at 1119. We express no opinion on the result that a plaintiff's sole remedy may be intervention in a suit of whose existence he is unaware. *McClain*, however, was a clear case of the claims the plaintiff wished to raise having been resolved in a prior action. As we have pointed out, such is not the case here. Finally, Appellee cites our case of *United States v. Allegheny-Ludlum Industries, Inc.*, 5 Cir. 1975, 517 F.2d 826, 870 n. 62, *cert. denied*, 1976, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187. There we discussed whether a charging party may initiate a lawsuit on a claim that was the basis of an earlier suit by the E.E.O.C. merely because the charging party, who did not intervene, is not satisfied with the judgment the Commission obtained. We held that the individual could not. The present case differs. Ms. Truvillion is seeking not to relitigate a case that progressed to the merits, but instead to have the court reach the merits for the first time.

In a real sense, Ms. Truvillion had no right of intervention in a defective suit to waive. We therefore find that the filing of Suit I by the E.E.O.C. did not cut off her statutory cause of action.

## C.

We must nevertheless affirm the district court's judgment if it correctly reasoned that the E.E.O.C. was without authority, once it filed Suit I, to issue Ms. Truvillion a right-to-sue letter. Obtaining such a letter is a jurisdictional prerequisite to a private suit under Title VII. *Hodge v. McLean Trucking Co.*, 5 Cir. 1979, 607 F.2d 1118;

*Cutliff v. Greyhound Lines*, 5 Cir. 1977, 558 F.2d 803, 806.

The Commission's authority to issue right-to-sue letters flows from the following statutory language: "If . . . the Commission . . . has not filed a civil action . . . [it] shall so notify the person aggrieved and within ninety days after the giving of such notice, a civil action may be brought against the respondent . . . by the person claiming to be aggrieved . . . ." 42 U.S.C. § 2000e–5(f)(1).

The reason that a private party's ability to sue is conditioned on notice from the Commission, and that such notice is permitted to issue only "if . . . the Commission . . . has not filed a civil action . . . ." is evident: to place primary responsibility for Title VII enforcement with the Commission while reducing the possibility of actions by private parties that duplicate those of the Commission. The statutory mechanism for preventing duplicative private suits—cutting off the Commission's ability to authorize a private suit the moment it *files* suit—will operate both fairly and efficiently in the bulk of cases. After all, most suits, once filed, reach a conclusion, and thus their determination by judgment, consent decree, voluntary dismissal, and so on, would be res judicata between the parties. The statutory mechanism of Section 2000e–5(f)(1) may therefore be viewed as a kind of statutory shorthand for the doctrine. The doctrine itself has too many branches, some of them brachiated, to be reproduced faithfully in a statutory device. By selecting the time of filing as the ordinary cut-off for Commission authority to issue a right-to-sue letter, the statute captures the effect of the doctrine in most cases. That date is thus ordinarily a useful benchmark for paring away duplicative suits.

There is no reason, however, to interpret the language of the statute so as to deprive the Commission of authority to issue a valid notice to sue even after it files suit, when, under the doctrine of res judicata, the Commission could itself file a second suit.[13] This situation will arise only in the unusual case, certainly not contemplated in the statute, in which the Commission files a suit that is jurisdictionally or procedurally defective, it is dismissed, and is not repaired and pressed by the Commission. To permit the Commission to authorize and an individual to bring suit in such cases is not to permit a duplicative proceeding for there has been no conclusive proceeding on the individual's claim. In such cases, it better comports with the statute's design to read into its authorization mechanism the finer calibrations of the res judicata doctrine. To do so faithfully embodies the congressional intent to avoid duplicative proceedings: that is what res judicata is about. Moreover, the fine tuning thus permitted carries out an equally important congressional purpose: to ensure an opportunity to enforce the statutory rights conferred by Title VII. Put simply, it would be anomalous to deny a person the right to bring her own action, when the E.E.O.C. could have started over, conducted a good faith investigation, issued a reasonable cause finding and brought a second action on the same claim.[14]

13. *See E.E.O.C. v. Rinella & Rinella*, N.D.Ill. 1975, 401 F.Supp. 175, 185–86, holding that a right-to-sue letter was valid although issued after the Commission filed a suit, seeking preliminary relief, based on the same facts as the private plaintiff's subsequent suit, seeking permanent relief.

14. A liberal construction of Title VII is the general rule in this circuit. For example, although timely filing with the EEOC is a "jurisdictional prerequisite" to employment discrimination litigation, *McArthur v. Southern Airways, Inc.*, 5 Cir. 1978 (en banc), 569 F.2d 276, *contra*, *Bethel v. Jefferson*, D.C.Cir.1978, 191 U.S.App.D.C. 108, 118 n. 64, 589 F.2d 631, 641 n. 64, the prerequisite is subject to equitable modification. *Marshall v. Sun Oil Co.*, 5 Cir. 1979, 605 F.2d 1331, 1337–1339 n. 8; *Chappell v. Emco Mach. Works Co.*, 5 Cir. 1979, 601 F.2d 1295; *Bickham v. Miller*, 5 Cir. 1978, 584 F.2d 736; *Reeb v. Economic Opportunity Atlanta, Inc.*, 5 Cir. 1975, 516 F.2d 924.

Moreover, we have already construed the right-to-sue letter provision of the statute broadly, *Franks v. Bowman Transp. Co.*, 5 Cir. 1974, 495 F.2d 398, 402–06, *rev'd on other grounds*, 1976, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444. In *Franks*, over a year had elapsed from the time the E.E.O.C. first issued

The House Report on the 1972 amendments to Title VII noted that "the primary concern [about the private right of action] must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available". H.R.Rep.No. 92–238, 92nd Cong., 2d Sess., *reprinted in* U. S.Code Cong. & Admin.News, 1972, p. 2148. To protect that option, we hold that where the E.E.O.C. brings a suit that is dismissed as jurisdictionally or procedurally defective, if the Commission does not bring a second suit, it may validly issue a right-to-sue letter to an aggrieved person.

### III.

The district court dismissed Ms. Truvillion's Section 1981 claim on the ground that it was barred by Mississippi's three-year statute of limitations governing unwritten contracts. Miss.Code Ann. § 15–1–29 (1972).[15] The district court was correct in turning to state law to find the appropriate statute of limitations. *Hamilton v. General Motors Corp.*, 5 Cir. 1979, 606 F.2d 576. Although this procedure is "neither rational nor historical, but purely precedential", *Ingram v. Steven Robert Corp.*, 5 Cir. 1977, 547 F.2d 1260, 1264, "federal courts must look in the first instance to the applicable statute of limitations in actions for back pay or similar damages under a federal statute for which Congress failed to provide limitations period", *id.* at 1260–61. Section 1981 is one such statute. *Id.*

The court reasoned that "[a] person suing under Section 1981 to enforce his right to be free of discrimination predicates his claim on the right to contract guaranteed in the statute. The contractual nature

of a claim under Section 1981 dictates application of the [three year limit for enforcing unwritten contracts]". But the statutory right Ms. Truvillion asserts is not the right to enforce an unwritten contract as the district court assumed. There was no contract of any kind between Ms. Truvillion and the hospital concerning the post of laboratory technician; instead, the hospital allegedly refused for racial reasons to employ her. Ms. Truvillion relies on a statutory right to be free from discrimination. She complains of the refusal of the hospital to deal with her; she does not assert a right arising from an agreement. The complaint sounds in tort, not in contract. *Ingram*, 547 F.2d at 1263. Because Mississippi has no statute of limitations designed to cover actions seeking redress for the tort of employment discrimination, the State's catch-all statute is applicable.[16] *See Heath v. D. H. Baldwin Co.*, N.D.Miss.1979, 447 F.Supp. 495, 504; *Walton v. Utility Products, Inc.*, N.D.Miss.1976, 424 F.Supp. 1145, 1147. The statute runs for six years, and does not bar Ms. Truvillion's claim.

Ms. Truvillion sought to bring each of her statutory claims as a class action. On remand, the district court must determine whether class certification is appropriate under Rule 23(b), Fed.R.Civ.P.

The case is REVERSED and REMANDED as to both causes of action for proceedings consistent with this opinion.

the plaintiff a right-to-sue letter until the time he filed suit. He alleged that the letter was received and misplaced by a nine year old nephew. We agreed with his argument that he had had no effective notice. We held that "the statutory notification is complete only upon actual receipt of the suit letter", because that rule "accords with the view we have expressed in prior cases that Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute". 495 F.2d at 404.

15. A contractual statute of limitations may be applicable, of course, in some Section 1981 suits. We have held that the recovery of back pay from an employer will be so determined. *See Johnson v. Goodyear Tire & Rubber*, 5 Cir. 1974, 491 F.2d 1364, 1378.

16. The statute provides:
All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.
Miss.Code Ann. § 15–1–49 (1972).