**UNITED STATES of America ex rel. David FRANKLIN, Plaintiff,**

v.

**PARKE–DAVIS, Division of Warner–Lambert Company and Pfizer, Inc., Defendant.**

**No. 96–CV–11651–PBS.**

United States District Court,
D. Massachusetts.

Oct. 10, 2002.

Thomas G. Hoffman, Thomas M. Greene, Greene & Hoffman, P.C., Boston, MA, for David Franklin.

Robert B. Fiske, Jr., James P. Rouhandeh, James E. Murray, Barbara D. Diggs, Davis Polk & Wardwell, New York City, David B. Chaffin, Hare & Chaffin, Boston, MA, for Parke–Davis.

Thomas E. Kanwit, U.S. Attorney's Office, Boston, MA, for U.S.

Stuart G. Svonkin, Robert A. Bertsche, Hill & Barlow, Boston, MA, for movants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

This is a *qui tam* action pursuant to 31 U.S.C. §§ 3729–33 alleging that defendant Parke–Davis made various false Medicaid claims in connection with the marketing and sale of its drug Neurontin.[1] The New York Times Company, the publisher of the *New York Times* and the *Boston Globe,* and the National Broadcasting Company, Inc. (the "media entities") seek to intervene to modify a protective order that defendant Parke–Davis claims bars Relator, plaintiff Dr. David Franklin, from distributing non-privileged documents produced in discovery to the press.[2] The media entities contend that the

---

1. The Court assumes familiarity with the factual background of this case. *See United States v. Parke–Davis,* 147 F.Supp.2d 39 (D.Mass.2001).

2. Actually the motion to modify morphed over time. Initially, the media entities sought to intervene to seek access to documents that it argued were designated improperly as confidential.

When the media entities learned that the defendant was taking the position that even non-confidential materials were covered by the order, the *motion to modify* changed in the nature of relief it was seeking.

protective order is overbroad and violates the First Amendment.[3] Parke–Davis claims that release of the documents would jeopardize its right to a fair trial and that modification of the protective order is unjustified. The Relator supports the position of the media entities, indicating that he will release non-privileged documents if the protective order is modified. After hearing, the motion is **AL-LOWED**.

### DISCUSSION

#### 1. *Intervention*

Third parties, like the media entities, "have standing to assert their claim of access to documents in a judicial proceeding." *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 787 (1st Cir.1988) (*"Public Citizen"*) (involving a protective order barring the nonlitigatory use of all future discovery in tobacco litigation). The proper procedural method for asserting access to discovery materials subject to a protective order is a motion to intervene pursuant to Fed.R.Civ.P. 24. *See id.* at 783. Because the protective order was entered in January 2002, and discovery is ongoing, the motion is timely. Both as a matter of discretion and of right, I *ALLOW* the motion to intervene.

#### 2. *The Motion*

The intervenors ask the Court to clarify or modify the protective order to allow parties to disseminate non-confidential discovery material. Courts have the inherent power to modify protective orders in light of changed circumstances during the time that such orders are in effect. *Id.* at 782. *See* the Manual for Complex Litigation (Third) § 21.432 (1995) ("A protective order is always subject to modification or termination for good cause. Even where the parties have consented to the protective order ... non parties, including the media ... may seek modification to allow access to protected information.").

The Protective Order states, in relevant part:

1. This Order shall govern the treatment of pleadings, correspondence, legal memoranda, documents (as defined by the Federal Rules of Civil Procedure and the Local Rules) and all other discovery materials which have been or will be filed, exchanged, served, produced or received by the parties during pre-trial proceedings in the above-captioned action, as well as any and all copies, abstracts and summaries (the "Discovery Materials"). Any person, other than the producing party, who shall obtain access to Discovery Materials shall use such Discovery Materials only in connection with the prosecution or defense of the above-captioned action and for no other purpose whatsoever.

2. (a) All documents and information furnished by a party in conjunction with this litigation which contain or disclose trade secrets or other confidential research, development, or commercial information ("Confidential Information") may be designated CONFIDENTIAL by said party and furnished to the other parties pursuant to the terms of this Order. The party receiving designated Confidential Information shall treat it as proprietary information and shall not use or disclose the information except for the purposes set forth in this Order or such orders as may be issued by the Court during the course of this litigation. The provisions of this Order extend to all designated Confidential Information regardless of the manner in which it is disclosed, including but not limited to documents, interrogatory answers, responses to requests for admissions, deposition transcripts, deposition exhibits, and any other discovery materials produced by a party in response to or in connection with any discovery conducted in this litigation, and any copies, notes, abstracts or summaries of the foregoing materials.

(b) A party may not designate as "Confidential" information contained in documents which are already in the possession of a third party even if the documents

---

**3.** The government opposes a modification because allowing media access would interfere with ongoing investigations. However, this action was filed in 1996 and the government has still not decided whether to intervene. Molasses moves more quickly.

contain the party's "Confidential" information.

(c) The designation of information as "Confidential" shall constitute a representation that such document, material or information has been reviewed and that there is a good faith basis for such designation.....

4. Any confidential information received by a party shall be used by that party solely for the purpose of conducting this litigation ... and shall in no event be used for any business, competitive, personal, private, public, or other purpose, except as required by law.

The defendants interpret the first paragraph of the order to forbid the dissemination of any discovery material, even documents which are not confidential, to third-parties except in connection with the prosecution or defense of the action. Disagreeing, intervenors point out that if the first paragraph is read to have this sweeping interpretation then paragraph four of the order is superfluous, since the provision governing the use of confidential material "solely for the purpose of conducting this litigation" would already be covered by the proscription against using any material for any purpose except the litigation. The Relator points out that he never understood the paragraph to apply to non-confidential materials.

While the proposed protective order was hotly contested in other respects before the magistrate judge and me, the first paragraph was not the crux of the earlier disputes because it was not objected to. Therefore, I did not address or focus on this paragraph in my earlier ruling on the scope of the protective order.

An analysis of the protective order as a whole suggests that defendants have the better argument regarding its scope, in light of the plain language of the first paragraph. Because the paragraph applies to all "Discovery Materials," not just information designated confidential in Paragraph 2, defendants are correct that the protective order, as presently worded, bars nonlitigatory use of all materials provided during discovery. Paragraph 4 provides heightened protection for confidential materials, i.e., a requirement that any person shown confidential materials must *sign an agreement.* That interpretation refines the question before the Court: (1) Is such a broadly sweeping order lawful under Fed.R.Civ.P. 26(c) and the First Amendment? (2) Even if lawful, should the Court modify the order?

Resolution of this dispute must begin with Fed.R.Civ.P. 24(c) which provides:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending, ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: ...

> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ....

Parties to litigation "have general first amendment freedoms with regard to information gained through discovery and ... absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." *Public Citizen,* 858 F.2d at 780. The press and the public are not entitled "to demand access to discovery materials which are solely in the hands of private party litigants." *Id.* Even where a party wishes to disclose discovery to the press, a valid protective order can limit a party's constitutional right to disseminate information gleaned through the discovery process. *See id.* "[W]here ... a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Seattle Times Company v. Rhinehart, et al.,* 467 U.S. 20, 37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (upholding the application of an identi-

cal state rule of civil procedure against a first amendment challenge).

But *Seattle Times* does not eliminate the first amendment as a factor in the analysis of the proper scope of protective orders. In *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6 (1st Cir.1986), the First Circuit emphasized that the "good cause" language of Rule 26 frames the appropriate analysis of first amendment concerns in protective orders.

"The Court [in *Seattle Times*] did not hold that a discovery protective order could never offend the first amendment. It held that the first amendment is not offended if three criteria are met: (1) there is a showing of good cause as required by Rule 26(c); (2) the restriction is limited to the discovery context; and (3) the order does not restrict the dissemination of information obtained from other sources . . . . . Protective orders are subject to first amendment scrutiny, but that scrutiny must be made within the framework of Rule 26(c)'s requirement of good cause."

*Anderson*, 805 F.2d at 6. Therefore, to pass muster, the protective order must meet this three-pronged test. Some courts have struck down blanket protection for documents which are not designated confidential. *See Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 94 (D.N.J.1986) (*mandamus denied*, 822 F.2d 335 (3d Cir.1987)); *SEC v. TheStreet.Com*, 273 F.3d 222, 233 n. 11 (2d Cir.2001).

With respect to the first "good cause" prong, defendants argue they have shown good cause in two ways. First, they argue that the release will jeopardize their right to a fair trial under the seventh amendment. However, publicity to date has been limited, and there has been no evidence of pervasive media coverage that would taint a jury pool. *See In re San Juan Star Co.*, 662 F.2d 108, 116 (1st Cir.1981) (upholding a protective order designed to ensure fair trial where the community was "fully saturated" with publicity to a point "beyond that which is tolerable" concerning a pending case).

Second, defendants argue that a broad protective order covering confidential and non-confidential discovery documents satisfies the "good cause" requirement because it obviates expense and speeds up the litigation by eliminating the need for a document-by-document review for confidentiality. Any modification to the protective order narrowing the first paragraph, defendants argue, would unfairly prejudice them because they claim to have relied on the protections they thought it offered in managing discovery thus far. *See Public Citizen*, 858 F.2d at 790 (suggesting that one rationale for a blanket protective order would be to induce a party to permit an opponent to go through its files taking relevant materials without screening for confidentiality); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993) ("Judges have found in many cases that effective discovery, with a minimum of disputes, is achieved by affording relatively generous protection to discovery material."). Were it not for the first paragraph of the protective order, defendants assert, they would have been more circumspect in carrying out their discovery obligations with regard to 75 boxes of materials involving over 200,000 documents.

But defendants, sophisticated parties well represented by counsel, have aggressively litigated this case to date: battling over the words of the protective order before the magistrate judge; appealing his order to this Court; haggling over the scope of discovery; and overasserting confidentiality of produced documents. Litigation over the protective order itself spanned fourteen months, involved seventeen separate docket entries, four briefs and three court hearings. In this context, claims of largess in the production of documents in reliance on a protective order are unpersuasive. For one thing, defendants initially classified almost every document as confidential, thereby belying any claimed reliance on the universal coverage of paragraph one. The Court has permitted as much time as necessary to finish a confidentiality review of all documents. Moreover, defendants have not pointed to one document that they wouldn't have produced if the protective order had been narrower from the beginning. Finally, "expedited" has not been an adjective to describe defense of this litigation.

Moreover, blanket protective orders are not favored. The First Circuit put parties on notice:

> To begin with, the protective order modified by the district court was a blanket protective order, that is, it was an order extending broad protection to all documents produced by Liggett, without a showing of good cause for confidentiality as to any individual documents. Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification.

*Public Citizen* at 790. Parties operating under a blanket protective order cannot rely on an unreasonable expectation that such an order will never be altered. While plaintiff did not object to paragraph one, this was not a negotiated stipulated protective order agreed upon by the litigating parties which could be enforceable through contract remedies in the pre-trial discovery context regardless of the constraints of the first amendment and Fed.R.Civ.P. 26(c). *See, e.g., Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.,* 748 F.2d 1421 (10th Cir.1984) (holding that a third party lacked standing to challenge the protective order entered *by stipulation* covering documents solely in the hands of the parties); *Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F.Supp. 393, 404 (W.D.Va. 1987) ("When ... the proposed modification affects a protective order stipulated to by the parties, as opposed to one imposed by the court, it is clear that the shared and explicit assumption that discovery was for the purposes of one case alone goes a long way toward denying the movant's request without more.")

Accordingly, the Court concludes that defendants have demonstrated no good cause for application of the protective order to non-confidential materials under Fed.R.Civ.P. 26(c) and that it is overinclusive in violation of the first amendment. Moreover, defendants have not demonstrated any prejudice from modification. They have been permitted to review all documents to assert confidentiality. With respect to the requirement that a party seeking a modification demonstrate changed circumstances, the Court points out that none of the circumstances that might have supported a broad order exist. Finally, the Court must factor the public interest involved in discussing alleged fraudulent practices. Accordingly, as a matter of law and discretion, I modify the protective order to apply only to confidential materials by striking the last sentence of paragraph one. The relator has the right to decide whether to disseminate these non-confidential materials to the media, or not.

## CONCLUSION

For the foregoing reasons, the motion to intervene is **ALLOWED** for purposes of challenging paragraph one of the protective order (Docket No. 177). The intervenors' motion to amend the protective order is **ALLOWED** as provided in this agreement. The intervenors' motion to require parties to maintain a *Vaughn*-type index throughout discovery, their motion to require discovery to be filed with the Court, and the motion for *in camera* inspection of all discovery designated as confidential, is **DENIED.** The Court **DENIES** intervenors' motion to designate all discovery material in the hands of the government, the real party in interest in this action, as material in the possession of third-parties for the purposes of the protective order. The Court also **DENIES** intervenors' motion to intervene to challenge the parties' designation of discovery material as confidential, and the intervenors' motion relating to documents filed under seal (Docket No. 205).