William G. MARSHALL, Jr., Plaintiff,

v.

Edward PLANZ, M.D., and Southeastern Cardiovascular Associates, Inc., Defendants.

Civil Action No. 1:97cv793–T.

United States District Court, M.D. Alabama, Northern Division.

Nov. 29, 2004.

Thomas S. Lawson, Jr., James N. Walter, Jr., Capell Howard PC, Joseph Terrace Carpenter, Nathan C. Prater, Law Office of Joseph T. Carpenter, Montgomery, AL, Mark L. Rosenberg, Alan A.B. McDowell, Beth M. Kramer, Michaels & Bonner, PC, Washington, DC, Jeffrey S. Jacobovitz, Robert A. Jaffe, Kutak Rock, Washington, DC, for Plaintiff.

Kerry Phillip Luke, Edward O. Conerly, Hall, Conerly, Mudd & Bolvig, Birmingham, AL, John F. Mandt, Phillip A. Nichols, Balch & Bingham, Birmingham, AL, Michael Baird Beers, Micheal S. Jackson, Beers Anderson Jackson Nelson Hughes & Patty, PC, Montgomery, AL, Joseph C. Espy, III, A. Lester (Les) Hayes, III, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, Paul G. Smith, Matthew C. Williams, Smith, Spires & Peddy, Birmingham, AL, Winston Whitehead Edwards, Bush Craddock & Reneker LLP, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

The current issue before the court, in this closed antitrust and defamation case, is whether non-parties should be allowed to intervene and have vacated an order, entered after final judgment, sealing the entire record. For the reasons given below, the court holds that the relief requested by the non-parties should be granted.

## I. BACKGROUND

In May 1997, in this Alabama federal court, plaintiff William G. Marshall, a cardiovascular surgeon, sued defendant Edward Planz, his former business partner, and defendant Southeastern Cardiovascular Associates, the professional corporation through which the two doctors practiced. Marshall asserted a number of federal and state antitrust and slander claims against Planz and Southeastern Cardiovascular Associates, contending that their illegal actions had resulted in, among other things, his loss of surgical privileges at two Alabama hospitals, Southeastern Alabama Medical Center and Flowers Hospital. This loss of privileges had been the product of an extensive peer review investigation and hearings that had concluded that Marshall's behavior had been disruptive and abusive.

After extensive litigation, this court entered a number of dispositive orders, the last and final one being on April 10, 2001, granting summary judgment on the merits in favor of Planz and Southeastern Cardiovascular Associates and against Marshall.

*See, e.g., Marshall v. Planz,* 145 F.Supp.2d 1258 (M.D. Ala.2001) (Doc. nos. 345 & 346); *Marshall v. Planz,* 13 F.Supp.2d 1231 (M.D.Ala.1998); *Marshall v. Planz,* 13 F.Supp.2d 1246 (M.D.Ala.1998). Marshall then appealed to the Eleventh Circuit Court of Appeals, and, on July 27, 2001, that court, at the joint request of the parties, dismissed the appeal with prejudice. On July 30, 2001, this court then granted the parties' joint motion to seal the entire record. In their motion, the parties argued that the record should be sealed because "the material in the record [is] inextricably related to health care and patient care issues and such sealing [is] in the interest of all parties and in furtherance of public policy which protects privacy rights in this area." [1]

This court, however, never vacated the summary-judgment orders entered on the merits, nor did this court ever dismiss this case as settled or in any way acknowledge on the record that the parties had settled this case; all the court's orders that were outstanding on April 10, 2001, remain outstanding, even today.

In separate lawsuits in Kentucky in late 2000 and early 2001, Donna Boyd, Claressia Patterson, and Harold Patterson sued Marshall for alleged medical negligence that resulted in the death of Boyd's mother and in a coma and amputations for Claressia Patterson; in addition, the Pattersons sued Community United Methodist Hospital, Inc., claiming that it negligently failed to inquire into the reasons for the revocation of Marshall's privileges from the two Alabama hospitals. The Kentucky lawsuits were filed prior to the conclusion of Marshall's litigation against Planz and Southeastern Cardiovascular Associates.

In order to discover information about the termination of Marshall's privileges at the two Alabama hospitals, the Pattersons and Boyd (sometimes referred to in this order as "the non-parties to this litigation" or simply as "the non-parties") now seek to intervene in the instant case and have the July 2001 order sealing the record vacated; the non-parties assert that such information will be useful in their Kentucky medical malpractice cases against Marshall and Methodist Hospital. Marshall, Planz, and Southeastern Cardiovascular Associates (sometimes referred to in this order as "the parties to this litigation" or simply as "the parties") oppose the relief requested by the non-parties.

## II. DISCUSSION

### A.

■ The parties to this litigation contend that this court is without jurisdiction to allow the non-parties to intervene because the case is settled and no longer active.

Settled or not, as long as this court has orders that are outstanding and enforceable by the parties in this court, the court has jurisdiction to enforce, or not to enforce, those orders. The parties to this litigation cannot have it both ways. They cannot, on the one hand, say that the court lacks jurisdiction as to its protective orders (including the July 2001 order sealing this case) insofar as the non-parties are concerned but yet, on the other hand, still has jurisdiction as to the protective orders insofar as the parties are concerned (for surely, if Planz acted unilaterally in violation of the protective orders, Marshall would be back in this court seeking immediate enforcement of those orders, arguing that the orders are binding and within the court's jurisdiction to enforce) or insofar as the court itself is concerned (for surely, if the court decided unilaterally to unseal the

---

**1.** Joint motion to seal entire record (Doc. no. 361), p. 1.

case, the parties would be vigorously arguing that the protective orders are still outstanding, binding, and enforceable.) Indeed, the mere fact that the parties to this litigation are now before the court seeking enforcement of one of the court's protective orders is the strongest evidence that there is, at least as to the protective orders, a part of this litigation that is very much alive and well. If this court truly did lack jurisdiction over its outstanding protective orders after final judgment as contended by the parties to this litigation, then it would lack jurisdiction to enforce the protective orders, with the result that the protective orders would no longer be enforceable and in effect—a result to which the parties to this litigation do not subscribe.

The court, therefore, concludes that it has the power to modify, and even vacate, its protective orders, even after final judgment as long as the protective orders are outstanding and thus enforceable.[2] See, e.g., United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 782 (1st Cir.1988) (because a protective order is essentially an injunction against the parties over which a court retains jurisdiction as long as it is outstanding, "the district court had the power to make postjudgment modifications to the protective order"); United States ex rel. Franklin v. Parke–Davis, 210 F.R.D. 257, 258 (D.Mass.2002) ("Courts have the inherent power to modify protective orders in light of changed circumstances during the time that such orders are in effect");

In re Agent Orange Product Liability Litig., 104 F.R.D. 559, 568 (E.D.N.Y.1985) (decision to lift a protective order, post-settlement, was within the sound discretion of the court); Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 529 F.Supp. 866 (E.D.Pa.1981) (modification of confidentiality order after summary judgment granted).

## B.

■ The parties contend, second, that intervention is unavailable after settlement. There is widespread support for the notion that a "district court may properly consider a motion for permissive intervention, for the limited purpose of modifying a confidentiality order, even after the underlying dispute between the original parties has been resolved." 6 Moore's Federal Practice, § 24.23[2] (3d ed.2004). Several appellate courts have endorsed this idea. See, e.g., Jessup v. Luther, 227 F.3d 993 (7th Cir.2000) (allowing permissive intervention after the settlement of a court action); Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir.1994) (same); Beckman Indus., Inc. v. Intn'l Ins. Co., 966 F.2d 470 (9th Cir.1992) (same); United Nuclear Corp., 905 F.2d at 1427 (same); Public Citizen, 858 F.2d 775 (allowing permissive intervention after judgment on the merits); Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc., 823 F.2d 159 (6th Cir.1987) (remanding district court's denial of intervention in a settled action because the record did not reflect the district court's consideration of the strong underlying tradition of open records); FDIC v. Ernst & Ernst, 677 F.2d 230 (2d Cir.1982) (allowing permissive intervention after the settlement of a court action); Mokhiber v. Davis, 537 A.2d 1100

---

2. This case therefore differs from those cases where a non-party seeks to intervene in a case that is entirely dismissed and *nothing* remains outstanding after the dismissal. *See, e.g., Davis v. Jury Comm'n of Montgomery County,* 261 F.Supp. 591 (M.D.Ala.1966).

(D.C.1988) (third party permitted to intervene after a judicially approved consent decree in order to challenge a protective order).

The rationale for this position is three-fold. First, the "right to challenge a closure order is rooted in the public's well-established right of access to public proceedings.... In order to preserve the right of access, 'those who seek access to [sealed] material have a right to be heard in a manner that gives full protection to the asserted right.'" *Jessup*, 227 F.3d at 997 (*quoting In re Associated Press*, 162 F.3d 503, 507 (7th Cir.1998)). *See also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir.1992) ("It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."). Second, efficiency considerations favor the modification of protective orders, even after final judgment. "[W]hen a third party wishes to modify a protective order so as to avoid duplicative discovery in collateral litigation, policy considerations favoring the efficient resolution of disputes justify modification unless such an order would tangibly prejudice substantial rights of the party opposing modification." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir.1994). Finally, allowing post-settlement or post-judgment motions to intervene may be more fair to third parties who, at the time the confidentiality order was entered, could not or did not know that their interests would be affected. *See, e.g.*, 6 *Moore's Federal Practice*, § 24.23[1] (3d ed. 2004) ("[T]o preclude challenges to a confidentiality order once a case has been settled would often make it impossible for third parties to have their individual day in court.").

Both the Eleventh Circuit Court of Appeals and the former Fifth Circuit Court of Appeals have indicated that post-settlement intervention is allowable under appropriate circumstances. For example, in *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir.1985), the district court had denied a movant's request to unseal records in a settled action. The movant had hoped to use the records in order to invoke offensive collateral estoppel against the same defendant in a separate action in California. The Eleventh Circuit reversed and remanded the district court's order on the ground that there was insufficient evidence to justify the sealing of the record. An underlying assumption of the court's opinion was that the movant was entitled to seek modification of the prior order sealing the record in the settled action.

The Eleventh Circuit reached a similar result in *Brown v. Advantage Eng'g, Inc.*, where the plaintiff moved for permissive intervention to unseal the record from a previously settled case. The appellate court vacated and remanded the district court's denial of the motion to intervene, explaining that, "because it is the rights of the public, an absent third party, that are at stake, any member of the public has standing ... to move the court to unseal the court file in the event the record has been improperly sealed." 960 F.2d at 1016.

The former Fifth Circuit, whose holdings may be binding on the Eleventh Circuit, has similarly held that post-judgment intervention is allowable.[3] *McDonald v.*

---

**3.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed

*E.J. Lavino Co.,* 430 F.2d 1065, 1072 (5th Cir.1970) (post-judgment intervention is allowable); *Stallworth v. Monsanto Co.,* 558 F.2d 257, 266 (5th Cir.1977) ("[T]he mere fact that judgment already has been entered should not by itself require an application for intervention to be denied."); *see also Sunbelt Veterinary Supply Inc.v. International Business Systems United States, Inc.,* 200 F.R.D. 463, 465 (M.D.Ala. 2001) ("Rule 24(b) allows, though not explicitly, for post-settlement permissive intervention on the part of nonparties for the purpose of modifying protective orders.").

To be sure, the former Fifth Circuit has also indicated that, because intervention is an auxiliary proceeding, it is dependent upon the existence of an existing suit within the court's jurisdiction. *See, e.g., Non Commissioned Officers Ass'n v. Army Times Publ'g Co.,* 637 F.2d 372, 373 (5th Cir.1981) ("A prerequisite of an intervention (which is an ancillary proceeding in an already instituted suit) is an existing suit within the Court's jurisdiction."); *Truvillion v. King's Daughters Hosp.,* 614 F.2d 520, 526 (5th Cir.1980) ("As we said in 1926, '(a)n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.' ") (quoting *Kendrick v. Kendrick,* 16 F.2d 744, 745 (5th Cir.1926));[4] *cf. Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989) (A "party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit.").

In addition, some have suggested that allowing post-settlement permissive intervention might undermine the parties' confidence in protective orders and, therefore, the court's ability to use such orders to facilitate settlement. *See, e.g., Brown,* 960 F.2d at 1017 (Edmondson, J., dissenting) ("Allowing private parties in civil litigation in federal court to seal the terms of their settlements and other parts of pretrial records significantly promotes voluntary settlements in some cases."); *Jessup,* 227 F.3d at 996 (summarizing the district court's view that "its ability to facilitate settlement would be substantially hindered if it could not guarantee confidentiality."). Finally, allowing intervention for the purposes of modifying protective orders may be unfair to the former litigants, who believed that their case was completed according to certain terms. *See, e.g., Farmland Dairies v. Commissioner of New York State Dept. of Agriculture and Markets,* 847 F.2d 1038, 1044 (2d Cir.1988) ("post-judgment intervention is generally disfavored because it fosters delay and prejudice to existing parties."); *Public Citizen,* 858 F.2d at 786 (discussing "the basic fairness notion that intervention should not work a 'last minute disruption of painstaking work by the parties and the court.' ") (quoting *Culbreath v. Dukakis,* 630 F.2d 15, 22 (1st Cir.1980)).

Here, however, Marshall's suit against Planz and Southeastern Cardiovascular Associates was not dismissed as settled, nor did the parties in their joint motion to seal the record rely on their alleged settlement on appeal as a basis for their motion in the district court; moreover, the court's protective orders (including it sealing or-

---

down prior to the close of business on September 30, 1981.

**4.** In contrast to the instant case, *Truvillion* concerned the right to intervene in a "jurisdictionally or procedurally defective" suit.

614 F.2d at 526. In spite of the language quoted above, *Truvillion* stands for the narrower proposition that "There is no right and no obligation to intervene in a defective suit." *Id.*

der) survived final judgment and, because the parties must comply with them, are still outstanding and enforceable. Therefore, the concerns against post-judgment intervention articulated above are not present here. The July 2001 sealing order was entered based solely on the representation by the parties that "sealing [was] in the interest of all parties and in furtherance of public policy which protects privacy rights," and this order remains outstanding and binding on all three parties based only on this premise.[5] Therefore, as with outstanding injunctions that continue to tell parties what they can and cannot do, *see Public Citizen,* 858 F.2d at 782 (a protective order is essentially an injunction against the parties over which a court retains jurisdiction as long as it is outstanding), the sealing order should remain subject to modification and even vacation by the court if the underlying reason for the order no longer obtains.

Given the above Eleventh Circuit law allowing post-judgment intervention, given the policy considerations in favor of public disclosure and fairness to litigants, and given that those considerations that disfavor post-judgment intervention are essentially absent here, this court concludes that post-settlement intervention by a third party is permissible.

## C.

Having concluded that it has jurisdiction to hear the motion and that the non-parties to this litigation may potentially intervene, the court turns its attention to whether the non-parties should be allowed to intervene in this case in order to unseal the record.

Rule 24 of the Federal Rules of Civil Procedure permits two types of intervention: permissive and as a matter of right. The non-parties do not specify which type of intervention they are seeking; however, since they neither cite any statute which would give them an unconditional right to intervene nor claim an interest in any property or transaction which formed the subject of Marshall's lawsuit such that the disposition of the lawsuit would impair or impede their ability to protect that interest, the court assumes the non-parties' proposed intervention to be permissive.[6]

Permissive intervention, the granting of which is "wholly discretionary with the court," *Purcell v. BankAtlantic Financial Corp.,* 85 F.3d 1508, 1513 (11th Cir.1996), is allowed (1) "upon timely application," and (2) "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). In turning to the second requirement first, the court notes that this "common interest" requirement is liberally construed, *Stallworth,* 558 F.2d at 269, and there need be no showing of a "direct personal or pecuniary interest in the subject of the litigation." *Piedmont Heights Civic Club, Inc. v. Moreland,* 83 F.R.D. 153, 157 (D.C.Ga.1979). The non-parties to this litigation assert that the revocation of Marshall's privileges at the two Alabama hospitals is central to their medical malpractice lawsuits in Kentucky and will,

---

**5.** Parties joint motion to seal entire record (Doc. no. 362).

**6.** Rule 24(a) provides:

"Intervention of Right: Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

in particular, be highly relevant to the negligent credentialing claims. While the non-parties admit that the nexus between this case and their own cases is unspecific, they attribute this ambiguity to their inability to ascertain the contents of the sealed record. In response, the parties to this litigation assert that the Kentucky lawsuits against Marshall are wholly unrelated to the anti-trust and defamation claims formerly at issue in this action. Yet, the parties' argument addresses only whether the cases share a common question of law; however, it is clear-particularly given the liberal construction of the "common interest" requirement—that the cases share a common question of fact: namely, the details surrounding the revocation of Marshall's privileges at the two Alabama hospitals.

With regards to the timeliness requirement, Fed.R.Civ.P. 24(b) fails to provide a definition and the Advisory Committee Note provides no clarification. Although the matter of whether a motion to intervene is timely is therefore left to the discretion of the district court, *National Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) ("Timeliness ... is to be determined by the court in the exercise of its sound discretion"), the Eleventh Circuit has outlined four factors to consider: "(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely." *Geor-* *gia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir.2002).

The parties to this litigation point out that the Pattersons filed their lawsuit in December 2000 and that Boyd filed hers shortly afterwards, in 2001. Both lawsuits were filed prior to the conclusion of Marshall's litigation in April 2001, and the current motion to intervene was filed in March 2004, approximately three years after the conclusion of this case.

The " 'requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice,' " *id.* (*quoting Chiles*, 865 F.2d at 1213), and the court is cognizant of the possibility that the non-parties might well not have been aware of Marshall's suit at the time that they filed their own suits. Although intervention subsequent to the conclusion of an action is "looked upon with a jaundiced eye," *McDonald*, 430 F.2d at 1072, and although the movants have not provided any justification for their delay, the timeliness requirement is less "implicated when ... the intervention is for the collateral purpose of seeking modification of a protective order." *Florida ex rel. Butterworth v. Jones Chems., Inc.*, 148 F.R.D. 282, 286 (M.D.Fla.1993), *cited with approval in Sunbelt*, 200 F.R.D. at 466. Moreover, extended delays between the termination of a case and the filing of a motion to intervene have been held to be "timely." *See, e.g., United Nuclear Corp.*, 905 F.2d at 1427 (intervention was timely, although made three years after termination of suit); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265–66 (9th Cir.) (same) (1964). Thus, there is nothing inherently untimely in the three-year delay of the non-parties in the instant case. Since "timeliness is not limited to chronological considerations but 'is to be determined from all the cir-

cumstances,'" *Stallworth*, 558 F.2d at 263–4. (*quoting United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)), the court will proceed to examine the three other timeliness factors.

In addressing the second factor—the prejudice to the parties of the original litigation that is posed by the motion to intervene—the parties argue that granting the intervention motion will prejudice them because of the time, effort, and expense required to respond to the intervention motion. However "the prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action." *Id.* at 265. Here, the time, effort, and expense the parties expended in responding to the intervention motion would have been expended regardless of the date upon which the non-parties had filed their motion.

With regards to the third factor—the extent of the prejudice to the would-be intervenor if his motion is denied—the non-parties contend that information regarding the revocation of Marshall's privileges may no longer be available from any source other than the court record. However, the parties point out that the non-parties have not provided any evidence that they requested or sought a court order for the desired information from either of the two Alabama hospitals which revoked Marshall's privileges; nor is there any indication that the non-parties sought to depose anyone with knowledge of the events at issue, other than Marshall. Because it is uncertain whether the non-parties could obtain the information they cur-

rently seek from sources other than the court record, the prejudice that they would suffer as a result of the court's denial of their motion is questionable.

Neither the parties nor the non-parties set forth persuasive arguments that would be relevant to the fourth timeliness factor: unusual circumstances militating either for or against the motion to intervene.

While the court is troubled by the unexplained and prolonged delay in filing this motion as well as by the possibility that the non-parties have not exhausted other means of obtaining the sought-after information, the court ultimately does not believe that the parties have been prejudiced by this delay or that the non-parties' delay was inherently untimely. Consequently, since the court concludes that the requirements of Fed.R.Civ.P. 24(b) have been satisfied, it will grant the motion to intervene.

### D.

■ The non-parties seek to unseal the entire record in the original proceeding or, alternatively, ask that the court conduct "such proceedings as are necessary to determine which portions of the sealed record are properly discoverable."[7] In response, the parties argue that the entire record is privileged under Alabama's peer review statutes. *See* 1975 Ala.Code §§ 6–5–33, 22–21–8, 34–24–58.

There exists a common-law right of access to judicial proceedings, and this right has been recognized as an "an essential component of our system of justice ... [and] instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir.2001).[8] *See also Nixon v. Warner Communications, Inc.*, 435 U.S.

---

**7.** Motion to intervene and unseal record (Doc. no. 364), p. 5.

**8.** This common law right of access does not extend to discovery material. *Chicago Tribune Co.*, 263 F.3d at 1311.

589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents....").  Given the importance of this right of access, the sealing of court records is carefully scrutinized.  "Where the trial court conceals the record of an entire case, making no distinction between those documents that are sensitive or privileged and those that are not, it must be shown that 'the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to that interest.'" *Chicago Tribune Co.,* 263 F.3d at 1311 (*quoting Wilson,* 759 F.2d at 1571).  In addition, the court must weigh the competing interests of the parties in accessing or concealing the documents at issue.  *Id.* at 1312.

In the instant case, as stated, the parties filed a joint motion in July 2001, asking the court to seal the record "based on the material in the record being inextricably related to health care and patient care issues and such sealing being in the interest of all parties and in furtherance of public policy which protects privacy rights in this area." [9]  In fact, the court is well aware of the health care and patient care issues implicated by this case, and it has entered numerous orders that have sealed various documents during the span of this litigation (generally on the ground of peer review privilege) and issued opinions extending testimonial privilege to certain statements made during a hospital peer review process.  *See, e.g., Marshall v. Planz,* 145 F.Supp.2d 1258 (M.D.Ala.2001). This court has consistently remained sensitive to the principle that " 'peer review, the process by which physicians and hospitals evaluate and discipline staff doctors, has become an integral component of the healthcare system in the United States,' " *id.* at 1264 (*quoting Bryan v. James E. Holmes Reg'l Medical Ctr.,* 33 F.3d 1318, 1321 (11th Cir.1994)) and recognizes this as a compelling governmental interest.

Nonetheless, because the sealing was not narrowly tailored but instead was done indiscriminately of the entire record, the court does not believe that the sealing can survive the non-parties' current challenge. The court sealed the entire record upon the parties' joint motion; yet, given the care that the parties and the court have demonstrated in protecting those documents viewed as privileged (as evidenced by the numerous confidentiality orders), the court cannot justify such an expansive order.  The argument that the "allegations and evidence which were considered by Court in this case were so intimately intertwined with the privileged peer review and quality assurance process that it would be impossible to separate out, in a meaningful fashion, any portions of the record which are not covered by the peer review privilege," [10] cannot survive scrutiny.  Nothing in the record (whether presented in camera or otherwise) supports the conclusion that portions of the record that were unprivileged prior to the sealing of the entire record in July 2001, and thus were open to public view for up to four years while this case was pending, deserve to be shielded from the public eye today.  Unprivileged documents do not become privileged merely by association with privileged ones. The court finds no justification that this entire case, "open to the public" for four years, should be "erased as if [it] never occurred."  *Chicago Tribune Co.,* 263 F.3d at 1311.

---

9.  Joint motion to seal entire record (Doc. no. 361), p. 1.

10.  Response of Southeast Alabama Medical Center in opposition to motion to intervene and unseal record (doc. no. 374).

This case "was handled in routine fashion." *Wilson*, 759 F.2d at 1569. The court entered many public orders detailing the claims asserted and summarizing the evidence submitted in support of and in opposition to the claims; some of these orders were even published in legal reporters and remain part of the public domain even today. *See, e.g., Marshall v. Planz*, 145 F.Supp.2d 1258 (M.D.Ala.2001); *Marshall v. Planz*, 1998 WL 473062 (M.D.Ala. 1998); *Marshall v. Planz*, 13 F.Supp.2d 1231 (M.D.Ala.1998); *Marshall v. Planz*, 13 F.Supp.2d 1246 (M.D.Ala.1998).[11] Under these circumstances, the public's right to access the judicial record in this case outweighs vague invocations of peer privilege. In the end, the parties' "desire to prevent the use of this trial record in other proceedings is simply not an adequate justification for its sealing.... Quite the contrary would appear to be true. If formal proceedings occur in one court and are relevant to issues being presented in another court, judicial economy would mandate their availability." *Wilson*, 759 F.2d at 1571.

## III. CONCLUSION

For the reasons stated above, the court concludes that it has jurisdiction to hear the non-parties' motion to intervene, that the non-parties should be allowed to intervene, and that the July 2001 sealing order should be vacated. However, any document sealed prior to July 30, 2001, shall retain its privileged status, subject to the authority of the magistrate judge assigned to this case to unseal that document. Whether a document sealed pursuant to a protective order should be unsealed should be determined on a document-by-document basis. Of course, should the magistrate judge determine that the non-parties

are entitled to see a sealed document, the magistrate judge may require that the non-parties review the document under the restrictions of an appropriate protective order entered in either this case or the Kentucky cases. The fact that a sealed document is unsealed for the non-parties does not necessarily mean that it should be unsealed for the world too.

An appropriate order granting the relief requested by the non-parties will be entered.

## ORDER

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Donna Boyd, Claressia Patterson, and Harold Patterson's motion to intervene and unseal record (doc. no. 364) is granted.

(2) The sealing order of July 30, 2001 (doc. no. 362), is vacated. However, any document sealed prior to July 30, 2001, shall retain its privileged and sealed status.

(3) Subject to standard review by the court, the magistrate judge assigned to this case is authorized, at the request of Donna Boyd, Claressia Patterson, and Harold Patterson, as well as at the request of plaintiff William G. Marshall and defendants Edward Planz Southeastern Cardiovascular Associates, to unseal any sealed document if the law and facts warrant such, regardless as to whether the document was previously sealed by a district judge or a magistrate judge.

---

11. Indeed, because many of the court's order were published, the July 2001 sealing order was a sham, at least in part. It is time to dissolve this sham as well.